[No. 9763.  In Bank. — August 31, 1886.]

## SIERRA UNION WATER AND MINING COMPANY, APPELLANT, *v.* B. F. BAKER, RESPONDENT.

AGREEMENT TO FURNISH WATER — CONSTRUCTION. — A certain agreement, stated in the opinion, whereby the assignors of the plaintiff contracted to furnish, deliver, and sell water to the defendant, construed with reference to the elevation at which the water should be delivered.

INSTRUCTIONS — EXCEPTION. — A party cannot except to instructions given at his own instance.

ID. — CONTRADICTORY INSTRUCTIONS — RECORD MUST SHOW EXCEPTION — APPEAL. — Contradictory instructions are erroneous, but the error will not be considered on appeal, unless the record shows that an exception was taken to the instructions at the trial.

APPEAL from a judgment of the Superior Court of Sierra County, and from an order refusing a new trial.

The facts are stated in the opinion of Mr. Justice Thornton.

*S. B. Davidson, I. S. Belcher,* and *T. C. Van Ness,* for Appellant.

*Van Clief & Gear,* for Respondent.

The COURT. — For the reasons given in the opinion heretofore filed, the judgment and order are affirmed.

The following is the opinion above referred to, rendered in Department Two on the 22d of October, 1885.

THORNTON, J. — By a deed bearing date the fifteenth of February, 1871, the Sears Union Water Company, a corporation organized under the laws of the state of California, sold and conveyed to W. R. Morgan and Timothy Donahue, together with other property, the Trainor ditch, situate in Table Rock and Sears township, county of Sierra, and state aforesaid. The ditch is described in the deed aforesaid as conveying the water of Slate Creek and its tributaries to St. Louis, Sierra County, with all its ravines, dams, flumes, reservoirs, and water privileges

"It is further understood and agreed that the so-called tail-water from Table Mountain township, which is furnished by the Sears Union water ditch, is a portion of the water to be furnished under this contract; and that in case of failure of the party of the first part to procure said tail-water during the period of this contract, that a reasonable deduction shall be made on account of such failure, to be mutually agreed upon between the parties hereto," etc.

Pursuant to the first agreement, Morgan and Donahue constructed the ditch required to convey the water contracted to be delivered for the use of the Pioneer mine.

On the 20th of November, 1882, Morgan and Donahue assigned the two contracts of date of the 30th of September, 1880, and the 3d of January, 1882, above mentioned, to the plaintiff, and also conveyed all their property, including the Trainor ditch, located in the county of Sierra. In the same month, the Sears Union Water Company conveyed to plaintiff all its ditches and mining properties located in the county last named.

The action is brought to recover of defendant sixteen thousand dollars for water alleged to have been furnished him under the above contracts during the water season of 1883.

It is averred in the complaint that Morgan and Donahue duly performed all the conditions of the afore-mentioned contracts on their part to be performed until the assignment to plaintiff above set forth, and since that time plaintiff has duly performed such conditions.

The defendant denies the due performance of the terms of the contract by plaintiff or its assignors, and specifically denies the furnishing and delivery of the tail-water described in the last agreement, and of the other waters mentioned in the agreement, to defendant as agreed on, either by Morgan and Donahue, or either of them, or by the plaintiff, at any time since the third day of January, 1882.

On the trial, the plaintiff requested the court to give the following instruction: "There is not in this state, strictly speaking, an absolute ownership of running water. Such water is in its nature incapable of ownership in the same sense in which one is said to own or possess other personal property. The ownership is of the use of the water. Under the deed of 1871 from the Sears Union Water Company to Morgan and Donahue, and the contract between Morgan and Donahue and the defendant, there was conveyed to the latter such tail-water as the said Morgan and Donahue had by virtue of the said deed. So long as such tail-water did or could flow into the Trainor ditch, the plaintiff here, as successor in interest to Morgan and Donahue, could not divert it.

"But the plaintiff was not under the terms of that contract obligated to put such tail-water into the Trainor ditch near or at points where it did not naturally flow into it. When such water flowing down a ravine naturally passed underneath the Trainor ditch, the plaintiff was not obligated to build a new dam or ditch for the purpose of putting such water into the Trainor ditch. If the defendant Baker was entitled to the water, and desired to take it up at such points, it was his duty to put himself in a position to receive it, and until he did put himself in such position, he cannot complain if the plaintiff used the water.

"Until the defendant Baker, the claimant of this water, was in a position to use it, the right to the water or water right did not exist in such sense that the mere diversion and use of it by the plaintiff was a ground of action, either to recover the water, or for damages for the diversion. If from the evidence you find that the defendant was entitled to the use of certain tail-water, but that said water would or did naturally flow by or under the Trainor ditch, and the defendant never put himself in a position to receive that water, then in that case the plaintiff had a right to take up and use such water until

such time as defendant had placed himself in a position to receive it."

The court gave that portion of the instruction concluding with the words "could not divert it," and refused the remainder.

The plaintiff reserved an exception to the refusal of the court to give the whole instruction as asked, and to its modification.

We cannot see that the court committed any error in giving that portion of the requested instruction which it did give of which the plaintiff can complain. The first three sentences in the direction given relate to the character of the ownership or property in water in this state; and while they may be correct statements of law, are totally irrelevant to anything contained in this case. There was no controversy herein between the parties as to the character of the ownership of water by Morgan and Donahue or by plaintiff, or whether it was conveyed to Morgan and Donahue by the Sears Union Mining Company; but the controversy related to the point whether plaintiff or its assignors had complied with the contract by which they and it were bound to furnish and deliver certain water to the defendant.

How Morgan and Donahue got their title or ownership to the water they had agreed to furnish and deliver was a question certainly outside of the case. If they had agreed to furnish and deliver the tail-water mentioned in the instruction, they and plaintiff claiming under them were bound to do so; if they had not so agreed, neither they nor plaintiff were bound to furnish and deliver it.

We will add here that there is an incorrect statement in the portion of the instruction given. The statement referred to is, that under the deed of 1871 from the Sears Union Water Company to Morgan and Donahue, and the contract between Morgan and Donahue and the defendant, there was conveyed to the defendant such

tail-water as the said Morgan and Donahue had by vir-
tue of the said deed. This statement, in point of fact
and law, is incorrect.

We look in vain for any conveyance of any water by
Morgan and Donahue to defendant. There is no such
conveyance in the agreements between them, which have
been, as to all material points, fully set forth above.
Morgan and Donahue's contract was to furnish and
deliver and sell certain water to the defendant in the
manner stated in the agreements, but nowhere was there
a conveyance of any water to the defendant.

If the foregoing views are correct, and we think they
are, the court below committed no error prejudicial to
plaintiff in giving the portion of the instruction above
set forth. It may be that defendant was prejudiced by
the ruling of the court as to this matter, but we cannot
see any prejudice to plaintiff.

As to the portion of the instruction refused, the propo-
sitions contained in it could not have been approved by
the court and given in its charge to the jury without
falling into palpable error.

To show this, it will be necessary to repeat to some
extent what has been before stated herein. The water
which was the subject of the aforementioned agreements
entered into by Morgan and Donahue was acquired by
them from the Sears Union Water Company. By the
deed of the 15th of February, 1871, the company above
named sold and conveyed to Morgan and Donahue
the Trainor ditch, with its tributaries, ravines, dams,
flumes, reservoirs, and water privileges, and all their
interest in the water known as tail-water flowing from
the Table Rock township.

It is evident from the perusal of the agreements of
Morgan and Donahue with defendant, above set forth,
that the tail-water claimed by them under the deed from
the Sears Union Water Company is a portion of the
water to be furnished under the above-mentioned con-

tracts of Morgan and Donahue with defendant. This water, it appears from the agreement of the 3d of January, 1882, was also furnished to Morgan and Donahue by a ditch known as the Sears Union water ditch. Morgan and Donahue further stipulated (see agreement of the 30th of September, 1880) with defendant to, construct and maintain, at their own expense, a ditch of sufficient size and capacity, not exceeding a limit specified in the agreement, to carry all the water belonging to them from St. Louis to a point or place on Sawmill Ravine, said ditch to connect with and to take and receive the water from all the ditches now owned or controlled by Morgan and Donahue at or near St. Louis, and to convey the said water to a point or place on the Sawmill Ravine, at such height or elevation that such water might be conducted therefrom to the new reservoir on the Pioneer mine, and to deliver continuously all said water through said ditch to the defendant at the said point or place on the Sawmill Ravine.

The object and purpose of the agreement is declared in the agreement of the 30th of September, 1880, and is set out above. All the obligations of Morgan and Donahue imposed by their agreements are equally binding on the plaintiff herein, as they were assumed by it.

A consideration of the foregoing stipulations shows that the court was correct in refusing to give the portion of plaintiff's second instruction which it requested.

That the plaintiff was bound by the foregoing agreements to maintain the ditch for the delivery of water through it at a point or place on Sawmill Ravine, which ditch was to connect with, take, and receive the water from all the ditches owned by Morgan and Donahue at or near St. Louis on the 30th of September, 1880, and to convey this water continuously through this ditch to a point or place on the ravine mentioned, at such an elevation that such water might be conducted therefrom to the new reservoir at the Pioneer mine, which was de-

fendant's mine, is so clearly manifest that it cannot be made more so by argument or illustration. This being so, it clearly follows that all the propositions in the rejected portion of the instruction were utterly discordant with any correct view of the case.

The proposition contained in such rejected request, that the plaintiff was not bound to put the tail-water referred to in the foregoing agreements into the Trainor ditch, near or at points where it did not actually flow into it, is entirely irrelevant to any issue involved herein. The plaintiff never contracted to put any particular tail-water or other water into the Trainor ditch, but it was bound by the contracts to take and receive all the water, including the tail-water, from the ditches owned and controlled by its assignors on the 30th of September, 1880, and to deliver them continuously at a point on Sawmill Ravine, that such water might be conducted from the point last named to the new reservoir on the Pioneer mine. The proposition above stated, and with which the portion of the request rejected begins, is entirely different from this, and such proposition is entirely foreign to any stipulation in the contracts mentioned. Admit everything that is affirmed by it to be true, and it lends no aid to a solution of the questions involved in this case.

The same is true of every other proposition involved in the rejected portion. The defendant was not bound to put himself in a position to receive any water that flowed underneath the Trainor ditch. The plaintiff was bound to deliver all water at the point on Sawmill Ravine, mentioned above, from which it might be conducted to the defendant's reservoir at the Pioneer mine, and plaintiff could not without a violation of its contract suffer the tail-water referred to in the contract to run off and to waste in a ravine which ran under the Trainor ditch, or to use it for its own profit.

The court, in our view, very properly refused the portion of the request which it was asked to give.

The plaintiff contends that the second instruction given at request of defendant is contradictory of the third instruction given at request of plaintiff, and that the third and fourth instructions given at request of defendant are contradictory of the fourth and sixth instructions given at request of plaintiff.

To this it may be said that the instructions just mentioned as given at request of defendant were not excepted to. Of course, plaintiff would not and could not except to instructions given at its instance. In this state of the case, the point as to a conflict between the instructions is not before us for determination. If contradictory instructions are given, the court commits an error of law, and such an error must be excepted to when the ruling is made, or it cannot be considered. (Code Civ. Proc., sec. 646.) Where, as in this case, on appeal from the judgment and the order denying a new trial, the statement on motion for a new trial fails to show that an exception was reserved to errors of law committed by the court on the trial, no question as to such errors comes before this court for examination.

We find no error in the record, and the judgment and order must be affirmed.

So ordered.